**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **GREGORY L. JOSEPH,** | |
| Plaintiff, | |
| v. | Civil Action No. 7:13-CV-96 (HL) |
| **NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**, | |
| Defendants. | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 23). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, and determining that there is no genuine dispute of the material facts, the Court finds that Defendant is entitled to judgment as a matter of law and grants Defendant's motion.

## I.    FACTUAL BACKGROUND

The undisputed material facts are these:[1]

### A.    Disability Insurance Policy

In June 1988, Plaintiff Gregory L. Joseph ("Joseph"), purchased an individual disability income insurance policy (the "Policy") from Defendant

---

[1] The facts set forth here are those articulated by Defendant in its Statement of Material Facts. (Doc. 23-32). Plaintiff has admitted each statement of fact enumerated by Defendant. (Doc. 31).

Northwestern Mutual Life Insurance Company ("Northwestern Mutual") through Walker Sullivan ("Sullivan"), an independent contractor authorized to solicit applications for insurance on behalf of Northwestern Mutual. The Policy provides a Full Benefit for total disability, a Proportionate Benefit for partial disability, and a lifetime benefit for presumptive disability. The Policy defines each category based on the impact of the disability on the insured's ability to perform the principal duties of his occupation at the time he becomes disabled or, in the case of presumptive disability, on the nature of the disability, such as the total and irrevocable loss of hearing in both ears. The Policy was amended shortly after issuance to extend the Initial Period from 60 months to June 24, 2023, which falls several months after Joseph's 65th birthday.

The "Claims" section of the Policy contains several provisions pertinent to this case:

4.1   NOTICE OF CLAIM

Written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible.
. . .

4.3   PROOF OF DISABILITY

Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within 90 days,

the claim will not be affected if the proof is given as soon as reasonably possible.

. . .

4.6    LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of disability has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

(Doc. 23-2, p. 8).

**B.    Plaintiff's Occupational History and Claim for Disability Benefits**

At the time he purchased the Policy, Joseph, a certified public accountant, held the position of CEO of Joseph Foodservice, Inc., an international food service distribution business. Joseph sold that business to Institutional Jobbers, Inc. in 1997. Then, from 1997 through 1998, Joseph formed a joint venture with Institutional Jobbers and prepared and negotiated a request for proposal to provide food and non-food supplies to the United States Armed Forces in Northern Europe. The joint venture received the contract in 1998, and Joseph worked from 1998 through 2000 providing services related to the supply contract with the Department of Defense. The contract ended in 2002, which corresponds with Joseph's allegation of the onset of his disability due to bilateral hearing loss.[2]

---

[2] Throughout the record there are conflicting dates associated with the onset of Joseph's hearing disability. The claim form submitted to Northwestern lists the beginning date of the disability as April 4, 2002. However, in his Complaint,

In 2002, Joseph formed a new joint venture between another company he owned, International Initiatives, Inc., Sysco Foodservice, Inc., and Axiom Logistiks, Gmbh., a German company. As a part of this endeavor, Joseph composed a request for proposal to supply food and non-food supplies to the United States Armed Forces in Europe and the Middle East. The proposal ultimately was unsuccessful, and the Department of Defense awarded the contract to a competitor in 2003.

Joseph left the food distribution business in 2003. Since that time, he has been engaged in real estate construction and development. Throughout the relevant claim period, Joseph has continuously operated his entrepreneurial endeavors and managed his personal financial affairs.

In April 2011, Northwestern Mutual received notice by telephone from Sullivan's office that Joseph intended to submit a claim for disability benefits. By letter dated April 20, 2011, Northwestern Mutual provided Joseph with a disability claim kit.[3] The kit included a Request for Disability Benefits form, an authorization for the release of medical records, and an attending physician statement form. The cover letter informed Joseph that the insurance company could not begin

_____

Joseph alleges that he has been disabled as of January 2003. Then, in the course of his deposition, Joseph testified that his disability began in September 2001, when he had his first hearing test.

[3] The April 20th letter lists the Beginning Date of Joseph's disability as April 1, 2006. That date appears to have been reported to Northwestern Mutual by Joseph's insurance agent. (Doc. 29, p. 13-14).

evaluating Joseph's claim until it received the completed forms, medical records, and Joseph's individual and corporate income tax returns for the last three consecutive years prior to the date his disability began.[4]

Northwestern notified Joseph in May 2011 and again in June 2011 that it had not yet received the required claim documents. The letter informed Joseph that if the documents were not received by June 15, 2011, his file would be closed. Upon hearing nothing further from Joseph, Northwestern subsequently closed Joseph's claim file.

On November 2, 2012, 18 months after Northwestern Mutual forwarded Joseph his claim kit, the insurance company received the completed claim form, which was dated October 31, 2012. Joseph indicated in the form that his claim was based on "consistent/permanent" loss of hearing, sleep apnea, which was diagnosed in 2007, and large disc herniation that began causing pain on August 6, 2012. (Doc. 23-6, p. 2). Joseph further stated that while his claimed hearing loss first appeared on April 4, 2002, he was not prevented from working the customary duties and hours of his occupation until September 1, 2012 as a result of his back pain. He identified his occupation as "real estate

---

[4] The Policy explains that the insured's benefit is determined using a Base Earned Income, which is calculated as the higher of the monthly earned income for a 12 consecutive month period during the 24 month period before the start of disability, or any two of the five calendar years before the start of disability.

development/consulting" and checked the box notating that the nature of his business had not changed since the onset of his disability. (Doc. 23-6, p. 4).

In addition to the claim form, Joseph submitted his individual tax returns for 2009, 2010, and 2011. Northwestern Mutual acknowledged receipt of Joseph's claim form and tax returns by letter dated November 6, 2012, but reminded Joseph that in order for his claim to be processed he still needed to provide an executed medical release authorization, attending physician statement, and medical records. During a November 8, 2012 telephone conversation with a Northwestern Mutual representative, Joseph stated that he was claiming benefits back to April 2002. Northwestern Mutual thereafter wrote to Joseph again on November 9, 2012, requesting that Joseph provide evidence of his disability for the entire period being claimed, including individual income tax returns for 1997 through 2008 and corporate income tax returns for 1997 through 2011, and reiterating the necessity of returning an attending physician statement form.

### C.    Claim Evaluation Process

A Northwestern Mutual field representative met with Joseph at his home for over three hours on November 27, 2012. Joseph had just undergone back surgery two weeks prior, on November 16, 2012. The two discussed Joseph's restrictions and limitations, his occupations, and his financial circumstances. The field representative also inquired about the nine year delay in submitting a claim

6

for hearing loss. Joseph provided numerous reasons for the late-filed claim, including a lack of understanding of his policy. He believed that the insurance policy applied only to catastrophic circumstances. No physical or any other form of incapacitation prevented him from filing an earlier claim. During his deposition, Joseph explained that Sullivan, the agent through whom he purchased the Policy, was aware of Joseph's hearing loss and encouraged him to file a claim prior to 2006. But Joseph believed that his hearing would get better and generally did not want to initiate a dispute with the insurance company. Joseph also had high hopes that his "real estate business was going to be successful and that changing vocations wasn't going to be as difficult as it has been in reality." (Doc. 25, p. 29).

Northwestern Mutual wrote to Joseph again on December 5, 2012, thanking him for meeting with the field representative and identifying evidence the insurance company still had not received, including tax returns and the attending physician statement form, and requesting that Joseph provide a written employment history, a description of his occupational duties, and a copy of the sales agreement from his business in 1997. That same date, Joseph telephoned Northwestern Mutual to report that he returned to a modified work schedule as of December 3, 2012. He also articulated his difficulty in locating tax returns prior to 2002. Northwestern Mutual ultimately provided Joseph with a Social Security

consent form that permitted the insurance company to obtain an earnings history report directly from the Social Security Administration.

By letter dated January 3, 2013, Northwestern Mutual informed Joseph that it still was awaiting receipt of requested information. The letter further stated that if the company did not receive the documentation by February 4, 2013, it would assume that Joseph was no longer interested in pursuing his claim. Joseph provided the following documents to Northwestern Mutual on January 9, 2013: (1) attending physician statement; (2) employment chronology for 1997 through 2012; (3) closing statement for the sale of Joseph Foodservice, Inc.; (5) schedule of payments received under the Department of Defense contract from 1998 through 2002; (6) profit and loss statements for International Initiatives from 1998 through 2002; (7) individual income tax returns for 2003 through 2008; and (8) Joseph Foodservice's income tax return for 1997.

After reviewing Joseph's medical records, Northwestern Mutual ultimately approved Joseph's claim based on his back condition and resulting surgery effective August 20, 2012.[5] Northwestern Mutual paid Joseph a Full Benefit for disability from November 18, 2012 through December 3, 2012, when Joseph

---

[5] The Policy defines "Beginning Date" as "the date on which benefits begin to accrue after the Insured becomes disabled" and shows in the schedule of benefits and premiums that the date is calculated as the "91st day of disability in the first 180 days after the start of disability." (Doc. 23-2, pp.4-5).

returned to work, and a Proportionate Benefit for partial disability from December 3, 2012 to January 3, 2013.

On March 20, 2013, Northwestern Mutual approved Joseph's claim based on his hearing loss back to February 1, 2011. The insurance company paid the Proportionate Benefit for partial disability from May 2, 2011 through January 18, 2012. Northwestern Mutual requested Joseph's 2012 individual income tax return on March 20, 2013, and asked that Joseph provide additional proof of loss for any benefits sought beyond January 3, 2013. Having not received the additional documentation, Northwestern informed Joseph in April 2013 that if it did not receive the information by May 19, 2013, the company would assume that Joseph claimed no additional benefits. The claim subsequently was closed May 20, 2013.

On October 30, 2013, Joseph provided Northwestern Mutual with the tax information the insurance company requested in March and April 2013. Based on that information, Northwestern Mutual paid Joseph a Proportionate Benefit for January 18, 2012 through December 2, 2013. Northwestern Mutual continues to administer Joseph's claim as one of partial disability due to his hearing loss and has paid a Proportionate Benefit each month through the present date.

### D.   Legal Proceedings

Joseph filed this action on May 31, 2013 to recover additional benefits under the disability insurance policy. He alleges a breach of contract for benefits claimed from January 2003 through February 2011. Joseph disagrees with Northwestern Mutual's assessment that his disability began in February 2011 rather than 2003 as he contends. He additionally seeks a declaration that he is entitled to future benefits for the irrevocable loss of hearing in both ears.[6]

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however,

---

[6] In his response to Defendant's motion for summary judgment, Joseph concedes that he does not meet the Policy's definition for presumptive total disability. (Doc. 30). That claim is abandoned and shall not be considered by the Court.

make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.  ANALYSIS

Northwestern Mutual moves for summary judgment on the following grounds: (1) Joseph's claim to recover benefits for each month before March 2, 2010 is barred by the Legal Actions provision of the Policy; (2) Joseph's claim is

barred in its entirety based on his failure to comply with the Notice of Claim provision and the Proof of Disability provision of the Policy; and (3) Joseph is not presumptively totally disabled within the meaning of the policy. (Doc. 23, p. 3).

Joseph has abandoned his claim for presumptive total disability benefits. Thus, the Court need not address that issue. As to the remaining two grounds espoused by Northwestern Mutual in support of its motion, the Court finds as a matter of law that Joseph failed to comply timely with the insurance policy's notice provisions without reasonable excuse and, thus, his claim is barred by the plain terms of the contract.

"Insurance is a matter of contract and the parties are bound by the terms of the policy." Richmond v. Ga. Farm Bureau Mut. Ins. Co., 140 Ga. App. 215, 221 (1976) (citing Barker v. Coastal States Life Ins. Co., 138 Ga. App. 164, 166 (1976)). As a general rule, the insured is "chargeable with knowledge of all the conditions imposed upon him by the terms of his policy." Id.

It is undisputed that the policy here requires Joseph as the insured party to provide Northwestern Mutual written notice of a claim of disability "within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible." (Doc. 23-2, p. 8). The Policy also contains a provision obligating the insured to submit written proof of disability "within 90 days after the end of each monthly period for which

benefits are claimed. If the proof is not given within 90 days, the claim will not be affected if the proof is given as soon as reasonably possible." (Id.).  The parties agree that while Joseph alleges that he became disabled as a result of his hearing loss some time in 2002, he did not initiate the claims process until April 2011, when his insurance agent contacted Northwestern Mutual on his behalf. Even then, Joseph admits that he waited an additional 18 months before submitting a written proof of claim dated October 31, 2012 and received by the insurance company on November 2, 2012.

Terms in insurance policies requiring written notice of a claim and proof of loss are valid and enforceable. See DeBord v. Peoples Benefit Life Ins. Co., 565 F. Supp. 2d 1350, 1354 (N.D. Ga. 2008); see also Metro. Life Ins. Co. v. Jackson, 79 Ga. App. 263, 265 (1949); Richmond, 140 Ga. App. at 221 (finding that notice provisions expressly made condition precedents to an insurer's liability are "valid and must be complied with, absent a showing of justification"). Under Georgia law, "timely notice to the insured of a claim or occurrence is a condition precedent to the insurer's duty to defend or pay." Equitable Life Assurance Soc'y v. Studenic, 77 F.3d 412, 415 (11th Cir. 1996). "Absent some justification, failure to provide timely notice of an occurrence can defeat coverage." Kay-Lex Co. v. Essex Ins. Co., 286 Ga. App. 484, 488 (2007). Georgia courts have held that a notice requirement is met so long as notice is

13

given "with reasonable diligence and within a reasonable length of time in view of the attending circumstances of each particular case." <u>Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.</u>, 132 Ga. App. 714, 719 (1979).

Ordinarily, "[a]s is true generally with regards to issues relating to reasonableness and sufficiency of compliance with stated conditions, questions of the adequacy of the notice and the merit of the insured's claim of justification are ones of fact which must be resolved by a jury." <u>Blaske v. Provident Life and Accident Ins. Co.</u>, 162 Fed. App'x 943, 947 (11th Cir. 2006) (quoting <u>State Farm Mut. Auto Ins. Co. v. Sloan</u>, 150 Ga. App. 464, 466 (1979)) (internal quotations and punctuation omitted).  However, "it does not follow that such an issue never can be resolved by the court as a matter of law." <u>Bates v. Holyoke Mut. Ins. Co.</u>, 253 Ga. 697 (1985). "Whether reasonableness can be decided as a matter of law, or whether it should remain in the province of the jury, depends on two factors: the sufficiency of the excuse, and the insured's diligence after any disability has been removed." <u>Lathem v. Sentry  Ins.</u>, 845 F.3d 914, 918 (11th Cir. 1988). "[A]n unexcused significant delay may be unreasonable as a matter of law." <u>Townsend v. National Union Fire Ins. Co.</u>, 196 Ga. App. 789 (1990).

In <u>Studenic</u>, the Eleventh Circuit considered whether an insured's 20 month delay in filing a claim for total disability due to a shoulder condition could be found reasonable under Georgia law. 77 F.3d 412. Before turning to whether

the particular excuses offered by the insured for the delayed claim were subject to a reasonableness determination as a matter of law, the court first examined numerous circumstances when Georgia courts have ruled that the reasonableness of the insured's excuse fell within the province of the jury. See, e.g., Lathem v. Sentry Ins., 845 F.2d 914 (11th Cir. 1988) (insured alleged he was mislead into believing there was no coverage by the insurer); Smith v. Southeastern Fidelity Ins. Co., 258 Ga. 15 (1988) (insured incapacitated or otherwise unable to notify the insured); Standard Guar. Ins. Co. v. Carwell, 192 Ga. App. 103 (1989) (insured believed the claim was specious); Sloan, 150 Ga. App. 464 (insured lacked knowledge of coverage); but see Townsend, 196 Ga. App. 789 (holding a 70 month delay in providing notice based on an insured's claim that he was unaware that there was coverage under his employer's policy and did not know the name of the insurer was unreasonable as a matter of law).

Taking these findings into consideration, the Studenic court then compared the three reasons proffered by the insured for not filing a timely claim. 77 F.3d at 416. The insured first stated that he had not contemplated the possibility of filing for disability under his policy. Id. Second, he testified that he believed that his condition would improve. Id. Finally, he explained that "he equated disability with being paraplegic. . . . [and] did not realize that the terms of the policy covered that particular injury." Id. The Eleventh Circuit found that the first two excuses did

not fall within any category in which Georgia courts have allowed the question of reasonableness to go to a jury and thus held that those particular explanations were unreasonable as a matter of law. Id.

As to the insured's third justification, that the insured lacked knowledge of coverage under his policy, the Court recognized that under certain circumstances Georgia courts have allowed a jury to determine whether ignorance of coverage justified a delay in filing a claim. Id. However, finding that the insured's personal policy clearly delineated that the definition of total disability, namely the inability of the insured to engage in the material duties of his occupation due to an injury or sickness, the court held the insured's explanation to be unreasonable as a matter of Georgia law. Id.

The excuses proffered by Joseph here parallel those put forth by the insured in Studenic. When questioned by the Northwestern Mutual field agent about the delay in filing his claim, Joseph first responded by stating that he did not understand the terms of his policy. (Doc. 23-16, p. 3). He believed that the policy applied to more catastrophic conditions. (Id.). It was not until his back issued worsened that he "got scared" and decided to file. (Id.). Joseph reiterated these points in the course of his deposition. He testified again that he "viewed the policy as a catastrophic policy" and that he "wasn't incapacitated." (Doc. 25, p. 33). He also stated, "I thought my hearing loss was going to get better, and I

16

didn't really understand the details of my policy." (Id.). He believed that his "real estate business was going to be successful" and "that the change in my vocation would be much simpler." (Id., pp. 29, 33-34).

Joseph's explanation that he did not file a timely claim because he believed that his hearing loss would improve is not reasonable as a matter of law. Nor, under the reasoning offered Studenic, is his testimony that he did not realize that his policy covered his disability. The Policy here, a personal policy purchased directly by Joseph, clearly defines both total and partial disability and provided Joseph with sufficient notice about when the effects of a disability triggered coverage under the policy and the requirements for initiating a claim.

Joseph argues that Northwestern Mutual has waived any technical defenses based on the Policy's notice requirements.[7] First, Joseph contends that summary judgment is not appropriate because Northwestern Mutual failed to reserve its right to deny Joseph's late-filed claim. Joseph contends that Northwestern mutual should be estopped from asserting a late notice defense because the insurance company "never sent Mr. Joseph a reservation of rights

---

[7] Joseph devoted a good portion of his response brief to an additional argument that Northwestern Mutual improperly classified his occupation as that of real estate developer rather than defense contractor. Northwestern Mutual replied, and the Court agrees, that the determination of Joseph's occupation is immaterial to the issue of whether Joseph filed a timely claim. The Court does point out that the parties have agreed that the Policy defines the term "his occupation" as "the occupation of the Insured at the time he becomes disabled." (Doc. 32-2, p. 5).

letter notifying him that it might deny or limit his claims because of late notice" and "acted as if Mr. Joseph's claim would be paid once all of the requested information was provided." (Doc. 30, p. 11).

It is true that none of Northwestern Mutual's correspondence with Joseph specifically used the terminology "reservation of rights." However, after learning that Joseph intended to claim disability benefits back to 2002, in its November 9, 2012 letter to Joseph, Northwestern Mutual referred Joseph directly to the Notice of Claim section of the Policy and quoted the language requiring that coverage under the policy is contingent upon the insurance company receiving notice of the claim within 60 days of the onset of any loss, or as soon as reasonably possible. (Doc. 23-15, p. 2). There also is no evidence in the record to suggest that a representative of Northwestern Mutual ever made any representation or promise to Joseph that his claim would be approved back to 2002 if he simply provided the documentation requested.

Northwestern Mutual counters, and Joseph admits, that there is no case law requiring a formal reservation of rights letter in the context of a first-party insurance contract such as the disability contract at issue here. The Court, likewise, can identify no Georgia case requiring a disability insurer to reserve its rights. However, the Ninth Circuit offers this germane explanation for why a reservation of rights letter is not warranted under the circumstances presented:

The reservation of rights requirement is important in the third party context because it puts the insured on notice that he has to protect his interests where they differ from the insurance company's interests. The insurer's control of his defense against the third party claim may run counter to how the insured would manage defense and settlement if he knew that the insurer might not pay the judgment or settlement. In the first party context, there is no claim against the insured by a third party, so there is no duty to defend and power to control the defense to which a reservation of rights letter pertains. Though insurers sometimes send them anyway in first party cases, this function is merely to protect the insurer against bad faith claims.

Equitable Life Assurance Soc'y v. Schwartz, 291 Fed. App'x 25, 27 (9th Cir. 2008).

Joseph next avers that Northwestern Mutual waived its right to deny Joseph's claim because the insurance company never explicitly told Joseph that his claim would be denied based on the delay and actually solicited historical documentation from Joseph in support of his claim for disability benefits back to 2002. This argument directly contradicts clear Georgia law. Georgia' insurance code provides,

Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer under the policy:

(1) Acknowledgment of the receipt of notice of loss or claim under the policy;

(2) Furnishing forms for reporting a loss or claim, for giving information relative to the loss of claim, or for making proof

19

<div style="margin-left: 2em;">
of loss or receiving or acknowledging receipt of any forms or proofs completed or uncompleted; or

(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any loss or claim.
</div>

O.G.G.A. § 33-24-40. Joseph's waiver argument on this basis therefore lacks merit and fails as a matter of law.

Finally, Joseph urges the Court to deny Northwestern Mutual's motion for summary judgment since it cannot show that it was prejudiced by Joseph's delayed disability claim. Georgia law is clear on this point and does not require an insurance company to show prejudice to bar coverage for late notice. Onebeacon America Ins. Co. v. Catholic Diocese of Savannah, 477 Fed. App'x 665, 672 (11th Cir. 2012) (citing Canadyne-Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547, 1557 (11th Cir. 1993).

Joseph's disability insurance policy very clearly lays out the requirements for filing a disability claim and directs the insured to provide written notice of a claim within 60 days after the start of any loss, or as soon as reasonably possible. The Court finds unreasonable as a matter of law each explanation put forth by Joseph for waiting effectively ten years to provide notice of his disability claim to Northwestern Mutual. Joseph's claim for disability benefits dating back to 2002 is thus barred by the notice provisions of the contract. The Court further holds that Joseph's waiver arguments lack any foundation in Georgia law. Based

on the foregoing, the Court accordingly grants summary judgment in favor of Northwestern Mutual.

## IV.   Conclusion

For the reasons discussed herein, Defendant's Motion for Summary Judgment (Doc. 23) is granted, and this case is dismissed with prejudice.

**SO ORDERED**, this the 24th day of March, 2015.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks